OPINION
In January 1982, plaintiff, James B. Olgesby, was hired by the City of Columbus, Department of Public Utilities ("DPU"). At all times relevant, a collective bargaining agreement existed between the city and plaintiff's union, the American Federation of State, County and Municipal Employees, Ohio Council 8, Local 1632.
In 1990, plaintiff was loaned to the Equal Business Opportunity Commission ("EBOC") and designated a business development assistant. On October 26, 1995, Gwendolyn Rogers, the Executive Director of EBOC, accused plaintiff, in writing, of theft and work duty violations and demanded that he be transferred back to the DPU. Rogers disseminated the writing to members of Columbus City Council and to the mayor's chief of staff.
On October 31, 1995, the director of DPU requested layoff certification for all business development assistants in the department. As of October 31, 1995, plaintiff was the only business development assistant in the DPU. Plaintiff was placed on administrative leave from November 2, 1995 through November 18, 1995, at which time he was laid off. Plaintiff was never recalled to work.
Subsequently, plaintiff filed a complaint in the Franklin County Court of Common Pleas against the City of Columbus, the Columbus Municipal Civil Service Commission, Rogers, both individually and in her capacity as Executive Director of EBOC, and various John and Jane Doe defendants. In his complaint, plaintiff alleged that defendants breached Article 26.2 of the collective bargaining agreement by issuing the layoff notification less than thirty days prior to the layoff.[1] In addition, plaintiff asserted claims for interference with contract, wrongful termination, civil conspiracy and intentional infliction of emotional distress. Plaintiff sought compensatory damages based on the allegations in his complaint.
Following their answer, defendants filed a motion to dismiss pursuant to Civ. 12(B)(6) or, in the alternative, a motion for summary judgment. The trial court granted the motion to dismiss and dismissed plaintiff's complaint with prejudice. It is from this judgment that plaintiff appeals, raising the following assignments of error:[2]
 [1.] The trial court erred in dismissing plaintiff's breach of contract claim in count one by finding that it did not properly state a claim upon which relief could be granted.
 [2.] The trial court erred in dismissing plaintiff's claim for interference with a contractual relationship in count two by finding that plaintiff had no contractual relationship with the defendant city of Columbus.
 [3.] The trial court erred in dismissing plaintiff's claim for intentional infliction of emotional distress which was set forth in count five, not count two of plaintiff's complaint.
A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. Thompson v. Cent. Ohio Cellular, Inc. (1994),93 Ohio App.3d 530, 538, citing State ex rel. Hanson v. Guernsey Cty.Bd. of Commrs. (1992), 65 Ohio St.3d 545 . When a party files such a motion, all factual allegations asserted in the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party. Id., citing Byrd v. Faber (1991), 57 Ohio St.3d 56, 60. In order for a court to dismiss a complaint pursuant to Civ.R. 12(B)(6), "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts warranting relief." State ex rel. Jennings v.Nurre (1995), 72 Ohio St.3d 596, 597, citing O'Brien v. Univ. CommunityTenants Union, Inc. (1975), 42 Ohio St.2d 242, syllabus.
As plaintiff's first and second assignments of error are interrelated, they will be addressed together. As noted previously, plaintiff sought damages for breach of the layoff procedures set forth in Article 26.2 of the collective bargaining agreement. Specifically, plaintiff argues that defendants issued the layoff notification less than thirty days prior to the layoff in derogation of the express provisions of Article 26.2. In that regard, Article 26.2 provides, as follows:
 Notice to the Commission. Whenever it becomes necessary because of a material change in duties, a reorganization, or a shortage of work or funds, to reduce the number of full-time employees in any department of the City, the Appointing Authority shall file a notice with the Civil Service Commission at least thirty (30) days prior to the expected day of the layoff specifying the class(es) in which the layoff is to occur and the number of employees to be laid off in each class.
In addition, Article 15 provides for a "Grievance and Arbitration Procedure." Article 15.1 defines a "grievance" as "a complaint arising under and during the term of this Contract raised by an employee of the Union against the City alleging that there has been a violation, misinterpretation or misapplication of an express written provision of this Contract." Article 15.3 provides for a four-step grievance procedure culminating in binding arbitration under Article 15.3(F), which states that "[a]ll grievance settlements reached at Steps 1, 2, 3, and 4 by the Union and the City shall be final, conclusive, and binding on the City, the Union, and the employees."
Plaintiff contends that the trial court erred in dismissing his breach of contract and interference with contract claims. Citing Fuldauer v.City of Cleveland (1972), 32 Ohio St.2d 114, Jackson v. Kurtz (1979),65 Ohio App.2d 152, and Cook v. Maxwell (1989), 57 Ohio App.3d 131, the trial court found that plaintiff, as a public employee, could not maintain either a breach of contract or a related interference with contract action against defendants because "the employment relationship between the government and a public employee is controlled by law and not contract." (Decision, page 4.) While the trial court's quoted assertion is a correct statement of the law as set forth in Fuldauer, Jackson, andCook, we find those cases distinguishable and, thus, inapplicable to the case at bar.
In Fuldauer, the electors of the city of Cleveland amended the city charter to establish a formula for setting the salaries for the city's police and fire department employees. The amendments required the salaries to be set at a rate higher than the highest rate paid to employees similarly situated in other large Ohio cities. Fuldauer, a taxpayer, challenged the constitutionality of the amendments, arguing, inter alia,
that municipal charter provisions, which permanently prevent an employer-employee determination of salaries and wages for public employees, constituted an abrogation of the freedom of contract provisions of the United States and Ohio Constitutions. The Fuldauer court refused to accept appellant's position, holding that "[a] public officer or employee holds his office as a matter of law and not of contract * * *." Id. at paragraph four of the syllabus. It is clear that Fuldauer is inapplicable, as it did not involve the issue raised in the instant case, i.e., whether a public employee may assert a breach of contract claim for an alleged breach of a collective bargaining agreement.
Similarly, we find Jackson distinguishable and, thus, inapposite. In that case, Jackson was suspended without pay for three days from her permanent position in the classified civil service of Ohio, allegedly for falsifying the reason she was absent from work on a certain day. Jackson filed a complaint in which she alleged, inter alia, that the disciplinary procedures to which she was subjected constituted a violation of her contractual rights under the collective bargaining agreement between her union and the state. The court upheld the trial court's dismissal of Jackson's breach of contract claim, finding that "[a] public employee holds his position as a matter of law and not of contract," and "the discipline of an employee in the classified service is governed exclusively by statute." Id. at 154. However, Jackson was decided prior to the enactment of the Ohio Public Employees' Collective Bargaining Act, R.C. Chapter 4117, effective April 1, 1984, which created "a comprehensive framework for the resolution of public-sector labor disputes by creating a series of new rights and setting forth specific procedures and remedies for the vindication of those rights." FranklinCty. Law Enforcement Assn. v. Fraternal Order of Police, Capital CityLodge No. 9 (1991), 59 Ohio St.3d 167, 169. The Act itself does not impair the right and responsibility of a public employer to "suspend, discipline, demote * * * discharge * * * or lay off * * * employees," but the public employer may agree otherwise. R.C. 4117.08(C)(5). If the public employer agrees to final and binding arbitration of grievances, the parties are subject solely to that grievance procedure, and the civil service commission has "no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure." R.C. 4117.10(A). Jackson does not address the interplay between the city's right to lay off a public employee and the corresponding layoff clause of a collective bargaining agreement in light of R.C. Chapter 4117. On this basis, Jackson is distinguishable.
Although the Cook case was decided after the enactment of the Public Employees' Collective Bargaining Act and dealt with a public employee's claim alleging a violation of the employee's contractual rights under a collective bargaining agreement, we find Cook distinguishable as well. The collective bargaining agreement in Cook failed to give the public employee (or the city) any contractual rights that would prevail over the statutory scheme for the disposition of appeals from disciplinary actions taken by the city because the grievance procedures set forth in the agreement did not include final and binding arbitration. As noted previously, the collective bargaining agreement in the instant case specifically addresses the layoff procedure and includes final and binding arbitration.
Despite having determined that the trial court erred in dismissing plaintiff's breach of contract and interference with contract claims for the reasons articulated in its decision, this court must affirm the trial court's judgment as to those claims because it was legally correct on other grounds. It has long been the law in Ohio that "where the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as the basis thereof."Agricultural Ins. Co. v. Constantine (1944), 144 Ohio St. 275, 284. See, also, State ex rel. Carter v. Schotten (1994), 70 Ohio St.3d 89, 92. Thus, when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, i.e., it achieves the right result for the wrong reasons, because such an error is not prejudicial. Newcomb v. Dredge (1957),105 Ohio App. 417, 424.
Failure to exhaust administrative remedies is an affirmative defense.Gannon v. Perk (1976), 46 Ohio St.2d 301, 310. In their answer, defendants pled failure to exhaust administrative remedies. Plaintiff's breach of contract and interference with contract claims are barred because his exclusive remedy was to file a grievance with the collective bargaining unit.
R.C. 4117.10(A) provides that a collective bargaining agreement between a public employer and the bargaining unit "governs the wages, hours, and terms and conditions of public employment covered by the agreement." That section further provides "[I]f the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure * * *." On its face, R.C. 4117.10(A) clearly provides that the collective bargaining agreement controls all matters related to the terms and conditions of employment, including the procedures by which bargaining unit employees may be laid off. Further, when the collective bargaining agreement provides for binding arbitration, R.C. 4117.10(A) recognizes that arbitration provides the exclusive remedy for violations of an employee's employment rights.
In the instant case, Section 1.6, Article I of the collective bargaining agreement states that the agreement "pertains to all employees within the bargaining unit." At the time of the alleged violation, plaintiff was a member of the bargaining unit. As a member, plaintiff was obligated to fulfill the conditions of the agreement by resorting to the four-step grievance procedure. Plaintiff does not assert in his complaint that he participated in the grievance process. As noted previously, if the public employer agrees to final and binding arbitration of grievances, the parties are subject solely to that grievance procedure, and the civil service commission has "no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure." R.C. 4117.10(A); Cook, supra, at 134. See, also, Kelley v. Cairns Brothers, Inc. (1993),89 Ohio App.3d 598, 606. Under Ohio law, complainants must exhaust any administrative remedies before invoking the jurisdiction of the common pleas court. Decrane v. City of Westlake (1995), 103 Ohio App.3d 481;Mayfield Heights Fire Fighters v. DeJohn (1993), 87 Ohio App.3d 358. Because there is no factual assertion in the complaint that plaintiff exhausted his administrative remedies before invoking the jurisdiction of the common pleas court, we find no error in the trial court's decision to dismiss plaintiff's breach of contract and interference with contract claims pursuant to Civ.R. 12(B)(6). Accordingly, plaintiff's first and second assignments of error are not well-taken.
By the third assignment of error, plaintiff contends that the trial court erred in dismissing his claim for intentional infliction of emotional distress. At the outset, we note that the trial court improperly concluded that count five of plaintiff's complaint sets forth a cause of action for defamation, rather than intentional infliction of emotional distress. We further note that defendants pled the affirmative defense of immunity pursuant to R.C. Chapter 2744 in their answer to plaintiff's complaint. In Ohio, immunity from civil liability is provided to a political subdivision and its employees under the Political Subdivision Tort Liability Act, R.C. Chapter 2744. Under that chapter, political subdivisions are immune from tort liability under most circumstances unless an exception applies. See R.C. 2744.02(A)(1) and (B). It is well-settled that political subdivisions are not liable for intentional torts committed by their employees. See, e.g., Wilson v.Stark Cty. Dept. of Human Services (1994), 70 Ohio St.3d 450, 452 (no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress).
Employees of political subdivisions are protected by statutory immunity from personal liability in civil actions for claims arising from their official actions. R.C. 2744.03(A)(6) recognizes only three exceptions to employee immunity. A public employee is personally liable for conduct "manifestly outside the scope of [the employee's] employment or official responsibilities," or undertaken "with malicious purpose, in bad faith, or in a wanton or reckless manner," or when liability is expressly imposed by statute. See R.C. 2744.03(A)(6)(a), (b) and (c), respectively. When a claim of intentional tort is asserted against an employee, the complaint must allege facts showing that the defendant: (1) specifically desired to injure the complainant or the complainant's property; or (2) knew that injury to the complainant was certain or substantially certain to result from the defendant's act and, despite this knowledge, still proceeded. Allen v. Dayton (Feb. 4, 1992), Montgomery App. No. 12800, unreported, citing Mitchell v. Lawson MilkCo. (1988), 40 Ohio St.3d 190, syllabus. In his complaint, plaintiff alleged the following:
 33. Defendant Rogers specifically desired to injure Plaintiff and cause him to lose his employment by circulating false allegations of theft and work duty violations.
 34. Defendant knew that her actions in disseminating the libelous letter of October 26th, 1995 would result in adverse employment action being taken against Plaintiff.
 35. Defendant Rogers['] actions were reckless[,] wanton, extreme and outrageous.
 36. As a direct and proximate result of Defendant Rogers' action, Plaintiff suffered severe emotional distress.
In construing the facts set forth in plaintiff's complaint in a light most favorable to plaintiff, this court finds that plaintiff properly set forth a claim for intentional infliction of emotional distress against defendant Rogers sufficient to qualify as an exception from immunity for employees. Plaintiff alleged that defendant Rogers specifically desired to injure him and cause him to lose his employment by circulating false allegations of theft and work duty violations; that she knew the dissemination of the false allegations via the letter of October 26, 1995, would cause adverse employment action to be taken against plaintiff; and that her actions were performed in a wanton or reckless manner. Because plaintiff laid a factual basis in his complaint sufficient to support his claim against defendant Rogers for intentional infliction of emotional distress, the trial court erred in dismissing that claim. Accordingly, plaintiff's third assignment of error is well-taken.
For the foregoing reasons, the first and second assignments of error are overruled, and the third assignment of error is sustained. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
DESHLER and McCORMAC, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Plaintiff attached a copy of the collective bargaining agreement to the complaint. In ruling on a motion to dismiss, the trial court must limit its review to the averments set forth in the complaint. York v.Ohio State Highway Patrol (1991), 60 Ohio St.3d 143, 144. When a claim is found upon a written instrument and a copy is attached to the complaint, pursuant to Civ.R. 10(D), the court may review the instrument along with the complaint. Hawthorne v. Benton Ridge Telephone Co. (Nov. 9, 2000), Franklin App. No. 99AP-1476, unreported.
[2] The notice of appeal in this case was actually filed before the entry of the order from which plaintiff sought to appeal. Under App.R. 4(C), a premature notice of appeal is treated as filed immediately after the entry of the judgment or order; therefore, the notice of appeal in the instant case was timely.