BAUGHMAN, d.b.a. Baughman's Salvage, Appellant,

v.

OHIO DEPARTMENT OF PUBLIC SAFETY
MOTOR VEHICLE SALVAGE, Appellee.

[Cite as *Baughman v. Dept. of Pub. Safety Motor Vehicle Salvage* (1997), 118 Ohio App.3d 564.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 96CA2410.

Decided March 7, 1997.

*John R. Haas*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Matthew L. Sagone*, Assistant Attorney General, for appellee.

STEPHENSON, Presiding Judge.

This is an appeal from a judgment entered by the Court of Common Pleas of Scioto County, Ohio, affirming an adjudication order issued by the Motor Vehicle Salvage Dealers' Licensing Board ("MVSDLB") revoking a salvage dealer's license held by Jeffrey Baughman, d.b.a. Baughman's Salvage, plaintiff below and appellant herein. The following errors are assigned for our review:

I. "The trial court erred by failing to find a violation of appellant's right to due process."

II. "Section 4738.03(A) of the Ohio Revised Code is inoperative and void for uncertainty of meaning and violates the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution or in the alternative, the trial [court] erred in its interpretation of R.C. 4738.03."

III. "The trial court erred by denying Baughman's motion for admission of additional evidence."

The record reveals the following facts pertinent to this appeal. Appellant received his salvage dealer's license in 1993 and, on January 1, 1994, began operation of a salvage business on Cockrells Run Road in Scioto County, Ohio. Several months thereafter, a "complaint" was received by the office of "Dealer Licensing Division" with respect to that business. There would appear to have been some degree of controversy below over the identity of the complainant. At first, the complaint was said to have been lodged by an "anonymous" party. It was later revealed, however, that the complainant was Robert Lambert. Lambert is an executive officer of a salvage dealers' association and is a registered lobbyist for the industry. He apparently files complaints on a regular basis against other salvage dealers claiming that they do not qualify for their licenses.

In any event, the complaint prompted several investigations of appellant's salvage business and eventually culminated with him being notified that he was in violation of standards set forth in the motor vehicle salvage laws of R.C. Chapter 4738. A hearing was held on February 23, 1995, at which time Timothy Hughes (an investigator of the Field Operations Division of the Bureau of Motor Vehicles) testified regarding his inspection(s) of Baughman's Salvage. The witness stated that the office of the salvage yard appeared to be "unused" and that the records for the business were kept at a "used car dealership" that appellant owned. Hughes also recounted that, on both visits to the salvage yard, the property had been locked up and there was "no publicly posted hours of operation." There was little in the way of inventory at the premises and sale invoices reviewed by Hughes demonstrated only $100 in salvage part sales.[1] This figure represented less than one percent of the total sales of appellant's business.[2] On the basis of these figures, as well as his observations of the salvage yard, Hughes concluded that appellant was not engaged "primarily" in the retail sale of salvage motor vehicle parts as required by law.

Appellant testified on his own behalf and explained that the business was a new operation and that he was trying to increase the sale of salvage parts. He also clarified that the salvage yard was kept locked up, and the records stored elsewhere, because of theft problems in the area. These explanations were apparently insufficient for the board members hearing the case. On March 7, 1995, an "Adjudication Order" was issued by the MVSDLB finding that appellant "was not primarily engaged in the business of selling at retail salvage motor vehicle parts" in violation of Ohio law. His salvage dealer's license was then ordered revoked.

On March 16, 1995, appellant filed a notice of appeal from the adjudication order to the court below. He also filed a motion requesting that the trial court permit him to "obtain and offer newly discovered evidence." The impetus for the motion lay with Lambert who, as previously discussed, was the individual who lodged the complaint against Baughman Salvage. Lambert is an officer of a salvage dealers' association and it was alleged that at least two of the three board members of the MVSDLB might also be members of the same association. If that were the case, appellant contended, then those board members should have recused themselves and not sat in judgment on the merits of the complaint against him as such action would violate his due process rights. Appellant

---

**1.** Appellant claimed that he had had salvage parts sales totaling $4,650. However, he could only produce invoices representing $100 worth of sales.

**2.** Total sales were reported to be $17,350 for the first quarter of 1994. However, ninety-nine percent of this amount was represented by car sales rather than sale of salvage parts.

indicated in his motion that he had no evidence to substantiate that the board members in question belonged to the same organization as Lambert. However, he requested permission to "obtain" the testimony of those board members to ascertain if this was the case.[3] A judgment was entered by the lower court on August 28, 1995, denying this request.

Both sides filed briefs and the matter was submitted to the court thereon. A ruling was issued by the trial court on January 17, 1996, finding that the adjudication order of the MVSDLB was "supported by reliable, probative and substantial evidence and * * * [was] in accordance with the law." The order was, therefore, affirmed and this appeal followed.

We begin our analysis by noting that the cause *sub judice* is governed by the provisions of R.C. 119.12, which allow for a party to appeal a ruling of an administrative agency to the court of common pleas. In reviewing an administrative appeal, the common pleas court is not permitted to either try the issues *de novo* or substitute its own judgment for that of the administrative agency. *Smith v. Sushka* (1995), 103 Ohio App.3d 465, 470, 659 N.E.2d 875, 878–879; *Cook v. Maxwell* (1989), 57 Ohio App.3d 131, 135, 567 N.E.2d 292, 296–297; *Steinbacher v. Louis* (1987), 36 Ohio App.3d 68, 71, 520 N.E.2d 1381, 1384. The role of the common pleas court in an administrative appeal is limited to determining whether the judgment of the administrative agency is support by reliable, probative and substantial evidence and is in accordance with law. See R.C. 119.12; see, also, *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750–751; *In re Williams* (1991), 60 Ohio St.3d 85, 86, 573 N.E.2d 638, 639. An appellate court is then typically restricted to ascertaining whether the common pleas court abused its discretion in reaching that determination. See *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240, 1241.[4] With this standard in mind, we turn our attention to the merits of the case before us.

---

3. Appellant stated that he had not learned that Lambert was the actual complainant until the night before the administrative hearing before the MVSDLB and, thus, he "did not have sufficient time" to investigate the matter.

4. We are cognizant of the decision in *Brown v. Ohio Bur. of Emp. Services* (1994), 70 Ohio St.3d 1, 635 N.E.2d 1230, where the Ohio Supreme Court inexplicably deviated from its prior course by phrasing the standard of review facing the court of appeals as being whether *the common pleas court's* decision was supported by reliable, probative, and substantial evidence. As Justice Wright noted in his dissent in *Brown,* all prior Ohio Supreme Court decisions on the matter had phrased the issue as being whether the *board's* decision was supported by reliable, probative, and substantial evidence. This court has previously noted the anomaly of this ruling and conceded that it is unclear the extent to which the Supreme Court has *sub silentio* overruled any of its previous decisions holding appellate courts to "an abuse of discretion" standard. See, *e.g., Vogelsong v. Ohio State Bd. of Pharmacy* (Dec. 27, 1996), Scioto App. No. 96CA2448, unreported, at 5, fn. 2, 1996 WL 752325; *Tough Times Auto Sales, Inc. v. Ohio*

■ Appellant argues in his first assignment of error that he was denied "due process" of law during the course of the administrative proceedings. The basis for this argument is his continuing assertion that several members of the MVSDLB were members of a trade association of which Lambert was an officer. Appellant concludes that he was not given a "fair" and "impartial" hearing because those members and Lambert belonged to the same organization. We are not persuaded. There is nothing in the records to substantiate that any of the three individuals on the MVSDLB who voted to revoke appellant's salvage dealer's license were members of the same organization as Lambert. Even assuming *arguendo* that they were members, we are still not convinced that this was sufficient to disqualify them *per se* from sitting in judgment at the administrative level. The Ohio General Assembly has dictated that two members of the MVSDLB must have previously operated in the salvage business. See R.C. 4738.09. One might expect that those individuals may have some affiliation, or some previous affiliation, with an industry association. We are not prepared to rule that such members may not serve on the MVSDLB and sit in judgment of complaints filed against other dealers.

■ There is no doubt that due process requires administrative hearings to be conducted in a fair and impartial manner. See 2 American Jurisprudence 2d (1994) 315, Administrative Law, Section 302. However, there is nothing in the record of the cause *sub judice* which convinces us that appellant's hearing was conducted otherwise. We have reviewed the transcript of the administrative hearing and have found no discernable bias or prejudice on the part of the MVSDLB members. To be sure, there was some degree of conflict between appellant's counsel and board members over the direction of cross-examination. Counsel sought to pursue a line of questioning directed at the motives of Lambert in lodging a complaint against appellant. The MVSDLB found this line of inquiry to be irrelevant and tried to steer the proceedings back to the substance of those allegations in the complaint. We need not and do not determine whether the MVSDLB erred in the manner by which it conducted these proceedings. It does not appear that any of the board members present at the hearing had any legal background and, in any event, the procedure to be followed before administrative agencies is not as strict and inflexible as that prescribed for ordinary civil actions. See 2 Ohio Jurisprudence 3d (1977) 251, Administrative Law, Section 83. There is no indication of any egregious procedural violation by the board and, as stated

---

*Motor Vehicle Dealers' Bd.* (Sept. 27, 1995), Gallia App. No. 94CA18, unreported, at 4, fn. 3, 1995 WL 572908; *Wells v. Monroe Cty. Bd. of Commrs.* (Jun. 28, 1995), Scioto App. No. 94CA2273, unreported, at 11, fn. 3, 1995 WL 404994. Fortunately, however, the arguments before us on appeal are directed more toward legal issues than evidentiary ones and we would reach the same result under either standard of review.

previously, we find no evidence of bias or prejudice toward appellant. For all these reasons, the first assignment of error is overruled.

We now proceed out of order to the third assignment of error wherein appellant contends that the trial court improperly denied his motion for admission of additional evidence below. It should be noted at the outset that admission of additional evidence during an administrative appeal before the court of common pleas is governed by the following provisions of R.C. 119.12:

"Unless otherwise provided by law, in the hearing of the appeal, the court is confined to the record as certified to it by agency. Unless otherwise provided by law, *the court may grant a request for the admission of additional evidence* when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency." (Emphasis added.)

Appellant sought below "to obtain * * * the testimony" of the three board members of the MVSDLB who revoked his license. It was hoped that such testimony would reveal them to be a part of the same salvage dealer association as Lambert. Appellant contends that he was entitled to "obtain" this evidence and to have it admitted pursuant to R.C. 119.12. Further, he charges that the lower court erred in overruling his motion and denying him that opportunity. We disagree. The decision to admit additional evidence pursuant to R.C. 119.12 lies within the sound discretion of the trial court. *Cincinnati City School Dist. v. State Bd. of Edn.* (Aug. 6, 1996), Franklin App. No. 95APE11–1457, unreported, 1996 WL 447790; *Ganley, Inc. v. Ohio Motor Vehicle Dealers Bd.* (Sept. 29, 1994), Franklin App. No. 93APE12–1646, unreported, 1994 WL 530307; *Turner v. Madison Corr. Inst.* (Aug. 19, 1992), Clark App. No. 2863, unreported, 1992 WL 206647. Its ruling will not be disturbed absent a showing of an abuse of that discretion. See *N.R., Inc. v. Liquor Control Comm.* (July 31, 1996), Summit App. No. 17630, unreported, 1996 WL 425912; *Mustafa v. Ohio State Med. Bd.* (Oct. 17, 1991), Franklin App. No. 91AP–282, unreported, 1991 WL 224202. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242, 1248–1249; *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218, 222; *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855, at paragraph two of the syllabus. In order to be an abuse of discretion, the error must be so palpable and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256,

662 N.E.2d 1, 3–4. This is a difficult standard to meet and we do not find that it has been met in this case.

 Appellant was not just seeking to admit additional evidence that was already in existence. He was seeking permission from the court to "obtain" additional evidence, through discovery, and then to have this new evidence admitted to the record. Appellant indicated in his motion below that he wanted "to obtain * * * the testimony" of the MVSDLB hearing board. This would suggest that appellant was proposing to depose those members or subject them to some related form of discovery. Moreover, in his brief, appellant indicates that he could obtain new evidence to substantiate his position in this case through "other discovery methods, including subpoenas." Such discovery methods were not available during the proceedings below. It is well settled that the Civil Rules pertaining to discovery do not apply to proceedings conducted pursuant to R.C. Chapter 119.12. See *Leake v. Ohio State Bd. of Psychology* (Jun. 30, 1993), Sandusky App. No. 5–92–32, unreported, 1993 WL 235826; *Alcover v. Ohio State Med. Bd.* (Dec. 10, 1987), Cuyahoga App. No. 54292, unreported, 1987 WL 27517; *Bell v. Ohio State Med. Bd.* (Jun. 13, 1986), Lucas App. No. L–85–441, unreported, 1986 WL 6698. Appellant would have been without authority to depose or otherwise "obtain" testimony from the three MVSDLB members who revoked his license and, therefore, we cannot conclude that the court below erred in denying his motion to admit additional evidence. Consequently, the third assignment of error is overruled.

We now return to the second assignment of error wherein appellant challenges the validity of R.C. 4738.03(A), which provides *inter alia* as follows:

"No person licensed as a motor vehicle salvage dealer under this Chapter shall engage in the business of selling at retail salvage motor vehicle parts or salvage motor vehicles, unless the business is operated *primarily* for the purpose of selling at retail salvage motor vehicle parts." (Emphasis added.)

 It was this statute which formed the basis for the revocation of appellant's salvage dealer's license. The MVSDLB found that he was not engaged "primarily" in the sale of salvage motor vehicle parts (at retail) for purposes of this law. Appellant contends that the word "primarily" as used in R.C. 4738.03(A) creates a standard so vague and uncertain that it renders the entire statute void and unconstitutional. We disagree.

 It should be noted at the outset that all legislative enactments enjoy a presumption of validity and constitutionality. *Adamsky v. Buckeye Local School Dist.* (1995), 73 Ohio St.3d 360, 361, 653 N.E.2d 212, 213–214; *Sedar v. Knowlton Constr. Co.* (1990), 49 Ohio St.3d 193, 199, 551 N.E.2d 938, 944–945; *Hardy v. VerMeulen* (1987), 32 Ohio St.3d 45, 48, 512 N.E.2d 626, 629–630. A statute will

only be held void where it is shown to violate the Constitution beyond a reasonable doubt, see *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 352, 639 N.E.2d 31, 32–33, and it is the party raising the argument who must carry the burden of showing such violation. *Washington Cty. Dept. of Human Serv. v. Rutter* (1995), 100 Ohio App.3d 32, 35, 651 N.E.2d 1360, 1362; *Washington Cty. Taxpayers Assn. v. Peppel* (1992), 78 Ohio App.3d 146, 154, 604 N.E.2d 181, 186–187. We are not persuaded that appellant has carried that burden in the cause *sub judice.*

The government must write statutes that provide "fair notice" to those who must obey the standards of conduct specified therein. See *Columbia Natural Resources, Inc. v. Tatum* (C.A.6, 1995), 58 F.3d 1101, 1105. A statute that either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning, and differ as to its application, violates the first essential of due process of law. *Connally v. Gen. Constr. Co.* (1926), 269 U.S. 385, 391, 46 S.Ct. 126, 127–128, 70 L.Ed. 322, 328. Under the so-called "vagueness doctrine," statutes that do not fairly inform a person of what is prohibited will be found unconstitutional as violative of due process. *State v. Reeder* (1985), 18 Ohio St.3d 25, 26, 18 OBR 21, 21–22, 479 N.E.2d 280, 281–282. By the same token, however, a statute is not necessarily void for vagueness merely because it could have been more precisely worded. *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 150–151, 446 N.E.2d 449, 450–451; see, also, *Roth v. United States* (1957), 354 U.S. 476, 491, 77 S.Ct. 1304, 1312–1313, 1 L.Ed.2d 1498, 1510–1511; *United States v. Petrillo* (1947), 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1541–1542, 91 L.Ed. 1877, 1882–1884. A statute is not required to reach a level of absolute mathematical certainty, see *State v. Schaeffer* (1917), 96 Ohio St. 215, 236, 117 N.E. 220, 226–227, or meet impossible standards of specificity. *Reeder, supra,* at 26, 18 OBR at 21–22, 479 N.E.2d at 281–282, citing *Jordan v. DeGeorge* (1951), 341 U.S. 223, 231–232, 71 S.Ct. 703, 707–709, 95 L.Ed. 886, 892–893. Furthermore, a statute will not be found void for vagueness if any "reasonable and practical construction" can be given to its language. See *Lyle Constr., Inc. v. Div. of Reclamation* (1987), 34 Ohio St.3d 22, 24, 516 N.E.2d 209, 211; *Eastman v. State* (1936), 131 Ohio St. 1, 5 O.O. 248, 1 N.E.2d 140, at paragraph four of the syllabus.

The term "primarily" as used in R.C. 4738.03(A) is not defined by that statute or by any other statute in that chapter. There also does not appear to be any court in this state that has previously construed that provision and so this is a case of first impression. We note that, absent evidence to the contrary, legislatures are presumed to have used words according to their generally accepted meaning and in their ordinary sense. *State ex rel. Carson v. Jones* (1970), 24 Ohio St.2d 70, 72, 53 O.O.2d 116, 117, 263 N.E.2d 567, 568; *Wachendorf*

*v. Shaver* (1948), 149 Ohio St. 231, 236–237, 36 O.O. 554, 556–557, 78 N.E.2d 370, 373–374; *Covert v. Indus. Comm.* (1942), 139 Ohio St. 401, 406, 22 O.O. 466, 468, 40 N.E.2d 672, 674–675. The term "primarily" is generally accepted to mean "chiefly" or "principally." See American Heritage Dictionary (2 Coll. Ed.1985) 983. A similar definition has been afforded by other jurisdictions which have defined the term to mean "principally" or "of first importance" when construing federal tax law, see *Andrew Crispo Gallery, Inc. v. Commr. of Internal Revenue* (C.A.2, 1994), 16 F.3d 1336, 1345; *Devine v. Commr. of Internal Revenue* (C.A.5, 1977), 558 F.2d 807, 813–814; *Lewis v. United States* (1968), 182 Ct.Cl. 426, 433–435, 389 F.2d 818, 823, construing federal banking law, see, *e.g., Agnew v. Bd. of Governors of Fed. Res.* (C.A.D.C.1946), 153 F.2d 785, 791, applying state law of agency, see, *e.g., State ex rel. Bunting v. Koehr* (Mo.1993), 865 S.W.2d 351, 354, or construing state statutes related to unemployment insurance, see *St. Vincent Infirmary Med. Ctr. v. Dir. of Labor* (1990), 32 Ark.App. 71, 75–79, 797 S.W.2d 460, 463–464, or liquor control. See *Brunswick Capitol Lanes v. South Carolina Beverage Control Comm.* (1979), 273 S.C. 782, 783–784, 260 S.E.2d 452, 453. This definition has been applied to a wide array of statutes and, thus, it is safe to assume that it constitutes the generally accepted meaning of that term. It logically follows that this generally accepted meaning was the one intended by the Ohio General Assembly when the statute was enacted.

We therefore apply the same definition here and construe the term "primarily" to mean "principally" or "of first importance." The provisions of R.C. 4738.03(A) may then be read to require that the retail sale of salvage motor vehicle parts must be the "principal" activity of the salvage dealer or "of first importance" to his business. Admittedly, this too is not a precise standard. As aforesaid, however, there is no requirement that statutes provide absolute mathematical certainty. *Schaeffer, supra,* 96 Ohio St. at 236, 117 N.E. at 226–227. The General Assembly did not provide an exact standard for this statute and we decline to read one in there by judicial fiat. One must look to the "totality of the circumstances" involved to determine whether the retail sale of salvage motor vehicle parts is principally, or primarily, the business of the salvage dealer for purposes of R.C. 4738.03(A). In terms of numbers, "primarily" means a majority or a numerical plurality. See *In re Ragan* (Bkrtcy.N.D.Ohio 1994), 171 B.R. 592, 595; *Deltide Fishing & Rental Tools, Inc. v. United States* (E.D.La.1968), 279 F.Supp. 661, 670. A numerical majority may not always control the determination, though, if it is outweighed by other facts and circumstances in the case.

Our review of the record would also indicate that this sort of standard was employed by the MVSDLB. Hughes testified at the administrative hearing that there were a number of different "criteria" which led him to conclude that

appellant was operating his business contrary to law. We must presume that the MVSDLB considered *all* those criteria before revoking appellant's license. It is stated in appellant's brief that the MVSDLB considered only "dollar volume of sales" in determining whether he was engaged primarily in the sale of salvage motor vehicle parts. However, there is nothing in the record to substantiate that this was the *only* criterion considered by the MVSDLB. We must presume, in absence of some indication to the contrary, that the board considered all the criteria about which Hughes testified. Appellant also urges us to define "primarily" as the number of salvage auto parts sold "versus autos sold." We would agree that this is certainly a factor to be considered under R.C. 4738.03(A). Nevertheless, we decline to make it the *only* factor to be considered under that statute. The MVSDLB must look at the totality of the circumstances involved rather than just one factor. For these reasons, the third assignment of error is without merit and is overruled.

Having considered all errors assigned and argued in the briefs, and finding merit in none of them, we hereby affirm the judgment of the trial court.

*Judgment affirmed.*

PETER B. ABELE, J., concurs in judgment and opinion.

HARSHA, J., concurs in judgment only.